


Jason M. Drangel (JMD 7204)
Robert L. Epstein (RE8941)
William C. Wright (WCW 2213)
EPSTEIN DRANGEL LLP
*Attorneys for Plaintiff*
60 East 42nd Street, Suite 2410
New York, NY 10165
Tel: 212-292-5390
Fax: 212-292-5391

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROVIO ENTERTAINMENT LTD fka ROVIO MOBILE OY<br><br>Plaintiff<br><br>v.<br><br>LESTER'S ACTIVEWEAR, INC.,<br>LESTER'S BOYS' SHOP, INC.,<br>LESTER'S GIRLS' SHOP, INC.,<br>LESTER'S OF GREENVALE, LLC,<br>LESTER'S OF HUNTINGTON, LLC,<br>LESTER'S OF N.Y., INC.,<br>LESTER'S OF RYE, LLC,<br>LESTER'S ONLINE, LLC,<br>LESTER'S YOUNG MEANSWER, INC.,<br>LESTER'S OF DEAL, INC.<br><br>Defendants | **COMPLAINT**<br><br>12: CIV _____<br><br><br>**JURY TRIAL REQUESTED** |

Plaintiff, Rovio Entertainment Ltd. fka Rovio Mobile Oy, a limited liability company incorporated in Finland, by and through its undersigned counsel, alleges as follows:

## NATURE OF THE ACTION

1.      This action arises under the Copyright Laws of the United States, 17 U.S.C. § 101 et seq.; for counterfeiting of Plaintiff's Marks in violation of 15 U.S.C. §§ 1114, 1116(d), and

1117(b)-(c); for trademark infringement of federally registered trademarks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114; for false designation of origin and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); and for related common law claims. Plaintiff seeks injunctive relief, an accounting, compensatory damages, trebling of the accounting and/or compensatory damages, punitive damages, attorney's fees and costs.

### JURISDICTION AND VENUE

2.      This Court has Federal subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1338(a) and (b), in that the case arises out of claims for copyright infringement under 17 U.S.C. §501(a); and this Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a) and 1338 (a) - (b).

3.      Venue is proper, *inter alia*, pursuant to 28 U.S.C. §1391 because upon information and belief, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and has caused damages to Plaintiff in this district.

4.      Personal jurisdiction exists over Defendants because on information and belief, Defendants are incorporated in New York, are located in New York, conduct business in New York and in this judicial district, or otherwise avail themselves of the privileges and protections of the laws of the State of New York, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

### THE PARTIES

5.      Plaintiff Rovio Entertainment Ltd. fka Rovio Mobile Oy ("Rovio") is a private liability company organized under Finnish law, having a principal place of business at Keilaranta

17 C, FI-02150 Espoo, Finland.

6.   Defendant Lester's Activewear, Inc. ("Activewear") is a New York corporation, having a place of business at 2411 Coney Island Ave., Brooklyn, New York, 11223.

7.   Defendant Lester's Boys' Shop, Inc. ("Boys") is a New York corporation, having a place of business at 2411 Coney Island Ave., Brooklyn, New York, 11223.

8.   Defendant Lester's Girls' Shop, Inc. ("Girls") is a New York corporation, having a place of business at 2411 Coney Island Ave., Brooklyn, New York, 11223.

9.   Defendant Lester's Greenvale, LLC ("Greenvale") is a New York limited liability company, having a place of business at 90 Northern Blvd. @ Glen Cove Rd., Greenvale, New York 11545.

10.   Defendant Lester's Huntington, LLC ("Huntington") is a New York limited liability company, having a place of business at 350 Route 110, Huntington Station, New York 11746.

11.   Defendant Lester's N.Y., Inc. ("N.Y.") is a New York corporation, having a place of business at 1534 2nd Avenue, New York, New York 10075.

12.   Defendant Lester's Rye, LLC ("Rye") is a New York limited liability company, having a place of business at 1037 Boston Post Rd., Rye, New York 10580.

13.   Defendant Lester's Online, LLC ("Online") is a New York limited liability company, having a place of business at 90 Northern Blvd., Greenvale, New York, 11548.

14.   Defendant Lester's Young Meanswear, Inc. ("Young") is a New York corporation, having a place of business at 2411 Coney Island Ave., Brooklyn, New York, 11223.

15.   Defendant Lester's of Deal, Inc. ("Deal") is a New Jersey corporation, having a place of business at 284 Norwood Ave., Deal, New Jersey 07723.

16.   Defendants' Activewear, Boys', Girls', Greenvale, Huntington, N.Y., Rye, Online, Young and Deal are collectively referred to hereinafter as Defendants.

## COMMON FACTUAL ALLEGATIONS

### Plaintiff Rovio and its Well-Known Angry Birds Game and Licensed Products

17.   Angry Birds is a puzzle video game developed by Finland-based Rovio. The game was first released for Apple's iOS in December 2009.

18.   In the game, players use a slingshot to launch birds at pigs stationed on or within various structures, with the intent of destroying all the pigs on the playfield. As players advance through the game, new birds appear, some with special abilities that can be activated by the player. Plaintiff has supported Angry Birds with numerous free updates that add additional game content, and the company has even released stand-alone holiday and promotional versions of the game.

19.   By the end of 2011, Angry Birds had a combined 500 million downloads across all platforms, including both regular and special editions. In fact, the game has been called "one of the most mainstream games out right now", "one of the great runaway hits of 2010", and "the largest mobile app success the world has seen so far".

20.   Players log more than 1 million hours of game time each day on the iOS version of the game and 3.33 million hours per day across all platforms. There are 40 million monthly active users across all platforms. In November 2010, digitaltrends.com stated that "with 36 million downloads, Angry Birds is one of the most mainstream games out right now". MSNBC's

video game news blog has written that "[n]o other game app comes close" to having such a following. The Christian Science Monitor has remarked, "Angry Birds has been one of the great runaway hits of 2010". In December 2010, in honor of the one-year anniversary of the release of Angry Birds, Plaintiff announced that the game had been downloaded 50 million times, with more than 12 million on iOS devices and 10 million on Android.

21.     In February 2010, Angry Birds was a nominee for the "Best Casual Game" award at the 6th annual International Mobile Gaming Awards in Barcelona, Spain. In September 2010, IGN named Angry Birds as the fourth best iPhone game of all time. In April 2011, Angry Birds won both the "Best Game App" and "App of the Year" at the UK Appy Awards. At the 15th edition of the Webby Awards, Angry Birds was awarded "Best Game for Handheld Devices".

22.     Angry Birds' popularity led to the creation of versions of Angry Birds for personal computers and gaming consoles, a market for merchandise featuring its characters, and even plans for a feature film and television series.

23.     Plaintiff has an extensive world-wide licensing program for merchandise featuring its characters. The most popular items have been t-shirts, plush toys, and cell phone accessories ("Products").

24.     While Plaintiff has gained significant common law trademark and other rights in its trademarks and Products through its use, advertising, and promotion, Plaintiff has also protected its valuable rights by filing for, and obtaining, federal trademark and copyright registrations.

25.     Plaintiff is the owner of the U.S. Trademark Registration No. 3,976,576 for ANGRY BIRDS for a wide variety of goods in Classes 9, 16, 28 and 41,  U.S. Trademark

Registration No. 3,988,064 for ![mark] for a wide variety of goods in Classes 9, 16, 28 and 41, and Published U.S. Trademark Application Serial No. 79/102,769 for a wide variety of goods in Class 3, 14, 18, 20, 21, 24, 25, 27, 29, 30, 32, 33, 34, 35, 36, 38 and 43 (the "Marks"). A true and correct copy of the registrations for the Marks and a printout from the USPTO's TARR system reflecting the Published Application are attached hereto **Exhibit A** and incorporated herein by reference.

26. Plaintiff also owns copyrights in and related to the Products. Plaintiff's copyrights protect the various proprietary characters originated in the game and extended through its line of Products. The line is updated from time to time to add new designs and products.

27. Rovio owns several U.S. Copyright Registrations relating to its products. For example, Rovio owns the following relevant certificates of registrations: VA1769078, VA1778702, VA1778705, VA1778703, VA1776995, VA1776992, VA1769080, VA1064249, VA1777195, as well as numerous common law copyrights (cumulatively hereinafter referred as "Copyright Work"). True and correct copies of the foregoing certificates of registration are collectively attached hereto as **Exhibit B** and incorporated herein by reference.

28. As a result of Plaintiff's efforts, the quality of its Products, its promotions, and word of mouth buzz, Plaintiff's Marks and Products have become prominently placed in the minds of the public. Members of the public have become familiar with Plaintiff's Marks and Products, and have come to recognize the Marks and Products and associate them exclusively with Plaintiff. Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such association. Indeed, the Marks and Products are famous in the United States as well as other countries.

## Defendant's Wrongful and Infringing Conduct

29.     Particularly in light of the success of Plaintiff and Plaintiff's game applications and Products, as well as the reputation they have gained, Plaintiff and its Products have become targets for unscrupulous individuals and entities who wish to take a free ride on the goodwill, reputation, and fame Plaintiff has built up in its Marks and Products, and the works embodied in Plaintiff's Copyright Works.

30.     A large number of these individuals and entities deal in infringing products and services, including products related to Plaintiff's Marks and Copyright Works. Their actions vary and include: manufacturing, copying, exporting, importing, advertising, promoting, selling, and distributing infringing and otherwise unauthorized products.

31.     Plaintiff investigates and enforces against such activity, and through such efforts, learned of Defendants' advertising, marketing, sale and offer for sale of infringing products nearly identical to Plaintiff's Copyright Works. The infringing products bore or were marketed and/or sold in connection with one or more of Plaintiff's Marks.

32.     Plaintiff had infringing products purchased from Defendants. Attached as **Exhibit C** are photos of Defendants' knock-off products and a printout from Defendants' website offering knock-off products for sale. The products are nearly identical to Plaintiff's Marks, Copyright Works, and/or Products, with only minor variations that most consumers would not be able to distinguish.

33.     The products purchased from Defendants were inspected to determine authenticity. The inspection of the purchased items confirmed that the items Defendants sold and offered for sale were in fact infringing on Plaintiff's Marks and Copyright Works.

34.     By these sales – and, upon information and belief, by their other dealings in

infringing products (including: importing, advertising, displaying, distributing, selling and/or offering to sell infringing products) – Defendants violated Plaintiff's exclusive rights in its Marks and Copyright Works, and used images and designs that are substantially similar to, identical to, and/or constitute infringement of Plaintiff's Marks and Copyright Works to confuse consumers and aid in the promotion and sales of their unauthorized products. Defendants' conduct and use began long after Plaintiff's adoption and use of its Marks and Copyright Works.

35.     Indeed, Defendants had knowledge of Plaintiff's ownership of the Marks and Copyright Works, and of the fame in such Marks and Copyright Works, prior to the actions alleged herein, and adopted them in bad faith. Defendants' infringing conduct is clearly willful given that they also sell authentic Angry Bird Products.

36.     Neither Plaintiff nor any of its authorized agents have consented to Defendants' use of any of Plaintiff's intellectual property, including its Marks and Copyright Works.

37.     Plaintiff has never authorized or consented to the use of its Marks or any confusingly similar marks by Defendants; nor has Plaintiff authorized Defendants to manufacture, copy, sell, or distribute any of its Copyright Works or products bearing its Marks.

38.     In committing these acts, Defendants have, among other things, willfully and in bad faith, committed the following, all of which has caused, and will continue to cause, irreparable harm to Plaintiff: infringed Plaintiff's Marks and Copyright Works; committed unfair competition; and unfairly profited from such activity at Plaintiff's expense. Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Federal Copyright Infringement)
### [17 U.S.C. §501(a)]

39.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

40.     Plaintiff is the exclusive owner of copyrights in and related to its Products and related products, and possesses copyright registrations with the U.S. Copyright Office relating to the Copyright Works.

41.     Defendants have actual notice of Plaintiff's exclusive copyright rights in the designs.

42.     Defendants did not seek and failed to obtain Plaintiff's consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works, distribute, sell, transfer, rent, perform, and/or market products bearing Plaintiff's Copyright Works.

43.     Without permission, Defendants intentionally and knowingly reproduced, copied, displayed, and/or manufactured products bearing Plaintiff's Copyright Works by offering, advertising, promoting, retailing, selling, and distributing related products which are, at a minimum, substantially similar to Plaintiff's Copyright Works.

44.     Defendants' acts, as alleged herein, constitute infringement of Plaintiff's Copyright Works, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such protected material.

45.     Defendants' knowing and intentional copyright infringement, as alleged herein, has caused, and will continue to cause, substantial and irreparable harm to Plaintiff, and has caused, and will continue to cause, damage to Plaintiff.   Plaintiff is therefore entitled to

9

injunctive relief, damages, Defendants' profits, increased damages, and reasonable attorney's fees and costs.

## SECOND CAUSE OF ACTION
### (Trademark Counterfeiting Under Sections 32, 34, and 35 of the Lanham Act)
### [15 U.S.C. §§ 1114(1)(b), 1116(d), and 1117(b)-(c)]

46.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

47.     Without Plaintiff's authorization or consent, and having knowledge of Plaintiff's well-known and prior rights in Plaintiff's Marks, Defendants have distributed, advertised, offered for sale, and/or sold counterfeit Products to the consuming public in direct competition with Plaintiff, in or affecting interstate commerce.

48.     Defendants' counterfeit Products reproduce, counterfeit, copy, and colorably imitate Plaintiff's Marks or display spurious designations that are identical with, or substantially indistinguishable from, Plaintiff's Marks.

49.     Defendants have applied their reproductions, counterfeits, copies, and colorable imitations to labels, point-of-purchase images, and advertisements intended to be used in commerce upon, or in connection with, the sale, distribution, and/or advertising of Defendants' counterfeit Products, which is likely to cause confusion, cause mistake, or to deceive consumers.

50.     Defendants' unauthorized use of Plaintiff's Marks on or in connection with the counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff.  Defendants' actions constitute willful counterfeiting of Plaintiff's Marks in violation of 15 U.S.C. §§ 1114, 1116(d), and 1117(b)-(c).

51.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damage to its valuable Marks and other damages in an amount to be proved at trial.

52.     Plaintiff does not have an adequate remedy at law, and will continue to be damaged by Defendants' sale of counterfeit Products unless this Court enjoins Defendants from such fraudulent business practices.

### THIRD CAUSE OF ACTION
### (Infringement of Registered Trademarks)
### [115 U.S.C. §1114/Lanham Act §32(a)]

53.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

54.     Plaintiff has continuously used its Marks in interstate commerce since at least as early as 2010.

55.     Plaintiff, as the owner of all rights, title, and interest in and to the Marks, has standing to maintain an action for trademark infringement under the Trademark Statute 15 U.S.C. §1114.

56.     Defendants are, and at the time of their actions complained of herein, were actually aware that Plaintiff is the registered trademark holder of the Marks.

57.     Defendants did not and failed to obtain the consent or authorization of Plaintiff, as the registered owner of the Marks, to deal in and commercially distribute, market, and sell Products and related products bearing Marks into the stream of commerce.

58.     Defendants intentionally and knowingly used in commerce the reproductions, copies, and/ or colorable imitations of Plaintiff's Marks in connection with the sale, offering for sale, distribution, and/or advertising of Defendants' goods by offering, advertising, promoting, retailing, selling, and distributing related products bearing Plaintiff's Marks.

59.     Defendants reproduced, copied, and colorably imitated Plaintiff's Marks and applied such reproductions, copies, or colorable imitations to labels, signs, prints, packages,

wrappers, receptacles, and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, and/or advertising of goods. Defendants thereupon offered, advertised, promoted, retailed, sold, and distributed marks and related products bearing Plaintiff's Marks.

60.     Defendants' egregious and intentional use and sale of items bearing Plaintiff's Marks has caused actual confusion and is likely to continue to cause further confusion, or to cause mistake, or to deceive, mislead, betray, and defraud consumers who believe that Defendants' items are authentic products manufactured by Plaintiff.

61.     Defendants' acts have been committed with knowledge of Plaintiff's exclusive rights and goodwill in tits Marks, as well as with bad faith and the intent to cause confusion, mistake and/or to deceive consumers.

62.     Plaintiff has suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to the Marks, and the goodwill associated therewith, for which it has no adequate remedy at law; thus Plaintiff requests injunctive relief.

63.     Defendants' continued and knowing use of Plaintiff's Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered trademarks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114. Based on such conduct, Rovio is entitled to injunctive relief as well as monetary damages, and other remedies provided by § 1116, 1117, and 1118, including Defendants' profits, treble damages, reasonable attorneys' fees, costs, and prejudgment interest.

### FOURTH CAUSE OF ACTION
### (False Designation of Origin, Passing Off & Unfair Competition)
### [15 U.S.C. §1125(a)/Lanham Act §43(a)]

64.     Plaintiff repleads and incorporates by reference each and every allegation set forth

in the preceding paragraphs.

65.     Plaintiff has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act §43(a) (15 U.S.C. §1125).

66.     Defendants have, without authorization, made false designations of origin on or in connection with its goods and services, which are likely to cause confusion, cause mistake, and/or are likely to deceive as to the affiliation, connection, or association of Defendants' products with Plaintiff's, and/or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities.

67.     Defendants' conduct described above violates the Lanham Act.  Defendants have unfairly competed with and injured Plaintiff, and, unless immediately restrained, will continue to injure Plaintiff, causing damage to Plaintiff in an amount to be determined at trial, and will cause irreparable injury to Plaintiff's goodwill and reputation.

68.     On information and belief, the conduct of Defendants has been knowing, deliberate, willful, intended to cause confusion, cause mistake, and/or to deceive and has been in blatant disregard of Plaintiff's rights.

69.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of use in commerce and continuing use of Angry Birds designs that are confusingly similar to, and constitute a reproduction of Plaintiff's Copyright Works would cause confusion, mistake, or deception among purchasers, users, and the public.

70.     Defendants' egregious and intentional use and sale of items that are confusingly similar to, and constitute a reproduction of Plaintiff's Marks unfairly competes with Plaintiff and is likely to cause confusion, mistake, or to deceive, mislead, betray, and defraud consumers into believing that the substandard imitations are authentic products or related products.

71.     Defendants' conduct constitutes false designation of origin (passing off) and unfair competition in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a), causing Plaintiff to suffer substantial and irreparable injury for which it has no adequate remedy at law.

72.     Defendants' wrongful conduct has permitted or will permit it to make substantial sales and profits on the strength of Plaintiff's marketing, advertising, sales and consumer recognition.  As a direct and proximate result of Defendants' wrongful conduct, as alleged herein, Plaintiff has been and will be deprived of sales of its Products in an amount as yet unknown but to be determined at trial, and has been deprived and will be deprived of the value of its Marks as commercial assets in an amount as yet unknown but to be determined at trial. Plaintiff seeks an accounting of Defendants' profits, and requests that the Court grant Plaintiff three times that amount in the Court's discretion.

73.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages, and other remedies as provided by the Lanham Act, including Defendants' profits, treble damages, reasonable attorneys' fees, costs, and prejudgment interest.

## FIFTH CAUSE OF ACTION
### (Violation of Deceptive Trade Practices Act)
### [N.Y. Gen. Bus. Law § 349]

74.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

75.     Defendants' aforementioned conduct is false, misleading, and constitutes the use of deceptive acts or practices in the conduct of business, trade, or commerce, and is misleading the public and injuring the good will and reputation of Plaintiff in violation of N.Y. Gen, Bus. Law §§ 349.

## SIXTH CAUSE OF ACTION
### (False Advertising)
### [N.Y. Gen. Bus. Law § 350]

76.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

77.     By reason of the foregoing acts, Defendants have engaged in, and are continuing to engage in, acts which are misleading the public and injuring the goodwill and reputation of Plaintiff in violation of N.Y. Gen, Bus. Law § 350.

## SEVENTH CAUSE OF ACTION
### (Unfair Competition)
### [New York Common Law]

78.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

79.     By marketing, advertising, promoting, selling, and/or otherwise dealing in the infringing products, Defendants have engaged in unfair competition including unlawful, unfair, and fraudulent business practices in violation of the common law of the State of New York.

80.     Defendants' marketing, advertising, promoting, selling, and/or otherwise dealing in infringing products is in violation and in derogation of Plaintiff's rights, and is likely to cause confusion, mistake, and/or deception among consumers and the public as to the source, origin, sponsorship, or quality of the goods of Defendants, thereby causing loss, damage and injury to Plaintiff and to the purchasing public.  Defendants' conduct was intended to cause such loss, damage and injury.

81.     Defendants knew, or by the exercise of reasonable care should have known, that their marketing, advertising, promoting, selling, and/or otherwise dealing in infringing products, and their continuing marketing, advertising, promoting, selling, and/or otherwise dealing in the

infringing products, would cause confusion mistake or deception among purchasers, users and the public.

82.    By marketing, advertising, promoting, selling, and/or otherwise dealing in infringing products, and their continuing marketing, advertising, promoting, selling and/or otherwise dealing in infringing products, Defendants intended to and did induce and intends to and will continue to induce customers to purchase its products by trading off the extensive goodwill built up by Plaintiff.

83.    Upon information and belief, the conduct of Defendants has been knowing, deliberate, willful, intended to cause confusion, cause mistake, and/or to deceive, and has been in disregard of Plaintiff's rights.

84.    Defendants' wrongful conduct, as alleged above, has permitted and will continue to permit them to make substantial sales and profits on the strength of Plaintiff's nationwide marketing, advertising, sales, and consumer recognition.  As a direct and proximate result of Defendants' wrongful conduct, as alleged herein, Plaintiff has been and will continue to be deprived of substantial sales of its Products and related products, in an amount as yet unknown but to be determined at trial, and has been and will continue to be deprived of the value of its Marks as commercial assets, in an amount as yet unknown but to be determined at trial. Plaintiff seeks an order granting Defendants' profits stemming from its infringing activity, and its actual and/or compensatory damages.

85.    Plaintiff has no adequate remedy at law for Defendants' continuing violation of its rights set forth above.  Plaintiff seeks preliminary and permanent injunctive relief.

86.    Plaintiff seeks exemplary or punitive damages for Defendants' intentional misconduct.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

87.   Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

88.   By virtue of the egregious and illegal acts of Defendants as described above, Defendants have been unjustly enriched in an amount to proven at trial.

89.   Defendants' retention of monies gained through its deceptive business practices, infringement, acts of deceit, and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

WHEREFORE, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.   For an award of Defendants' profits and order that Plaintiff recover Defendants' illicit profits and damages arising out of the acts of deception and infringement described above, and a sum equal to three times such profits or damages (whichever is greater), pursuant to 15 U.S.C. § 1117(a) and (b);

B.   For an award of statutory damages of $2 million per counterfeit mark per type of goods or services sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117(d).

C.   For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for trademark infringement under federally registered trademarks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114;

D.   For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for copyright infringement under 17 U.S.C. §501(a);

E.    In the alternative to actual damages and Defendants' profits pursuant to 17 U.S.C. §504(b), for statutory damages pursuant to 17 USC §504(c), which election Plaintiff will make prior to the rendering of final judgment;

F.    For an award of Defendants' profits and Plaintiffs' damages in an amount to be proven at trial for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

G.    For restitution in an amount to be proven at trial for unfair, fraudulent and illegal business practices.

H.    For damages to be proven at trial for common law unfair competition;

I.    For an injunction by this Court prohibiting Defendants from engaging or continuing to engage in the unlawful, unfair, or fraudulent business acts or practices described herein, including the advertising and/or dealing in any infringing product; the unauthorized use of any trademark, copyright or other intellectual property right of Plaintiff; acts of trademark and copyright infringement; unfair competition; and any other act in derogation of Plaintiff's rights;

J.    For an order from the Court requiring that Defendants provide complete accountings and for equitable relief, including that Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and or pay restitution, including the amount of monies that should have been paid if Defendants' complied with their legal obligations, or as equity requires;

K.    For an order from the Court that an asset freeze or constructive trust be imposed over all monies and profits in Defendants' possession which rightfully belong to Plaintiff;

L.    For destruction of the infringing articles in Defendants' possession under 17 USC §503;

M.    For damages in an amount to be proven at trial for unjust enrichment.

N.    For an award of exemplary or punitive damages in an amount to be determined by the

Court;

O.    For Plaintiff's reasonable attorney's fees;

P.    For all costs of suit;

Q.    For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury in this action.

Dated:    8/2/12

Respectfully submitted,

EPSTEIN DRANGEL LLP

BY: _____

Jason M. Drangel (JMD 7204)
Robert L. Epstein (RE8941)
William C. Wright (WCW 2213)

60 East 42nd Street, Suite 2410
New York, NY 10165
Telephone: (212)292-5390
Facsimile: (212)292-5391
E-mail: jdrangel@ipcounselors.com
*Attorneys for the Plaintiff*
Rovio Entertainment Ltd.

# EXHIBIT A

# United States of America

## United States Patent and Trademark Office

## ANGRY BIRDS

**Reg. No. 3,976,576**

**Registered June 14, 2011**

**Int. Cls.: 9, 16, 28 and 41**

**TRADEMARK**

**SERVICE MARK**

**PRINCIPAL REGISTER**

ROVIO MOBILE OY (FINLAND CORPORATION)
ANNANKATU 31-33C 37
FI-00100 HELSINKI
FINLAND

FOR: VIDEO GAMES FOR MOBILE DEVICES, PERSONAL COMPUTERS, CONSOLES, TABLETS; ELECTRONIC GAME PROGRAMS; DOWNLOADABLE ELECTRONIC GAME PROGRAMS; ELECTRONIC GAME SOFTWARE; COMPUTER GAME PROGRAMS; DOWNLOADABLE COMPUTER GAME PROGRAMS; INTERACTIVE GAME PROGRAMS; INTERACTIVE GAME SOFTWARE; APPARATUS FOR GAMES ADAPTED FOR USE WITH TELEVISION RECEIVERS; CINEMATOGRAPHIC APPARATUS; PROTECTIVE CARRYING CASES SPECIALLY ADAPTED FOR PHONES AND HANDHELD COMPUTERS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FOR: BOOKLETS AND MANUALS REGARDING VIDEO GAMES; BOOKS IN THE FIELD OF VIDEO GAMES; CALENDARS, CHILDREN'S BOOKS, COMIC BOOKS, ADDRESS BOOKS, COLORING BOOKS AND ACTIVITY BOOKS; BOOK COVERS; BOOKMARKS; ERASERS, GIFT WRAPPING PAPER, GIFT BOXES MADE OF CARDBOARD, INVITATION CARDS, MAGAZINES REGARDING GAMES, MEMO PADS, NOTE PADS, NOTEBOOKS; PAPER NAPKINS, PAPER PARTY HATS AND PARTY DECORATIONS MADE OF PAPER, PAPERBACK BOOKS, PENCIL SHARPENERS, PENS AND CRAYONS, PICTURE STORY-BOOKS, PLAYING CARDS, POSTERS, POSTCARDS, RING BINDERS, RUBBER STAMPS, SCRATCH PADS, PAPER STAPLERS, STATIONERY, STATIONERY-TYPE PORTFOLIOS AND FOLDERS, STICKER ALBUMS, STICKERS, TRADING CARDS; GENERAL PURPOSE PLASTIC BAGS; PAPER DISHES; PROTECTIVE COVERS FOR NOTEBOOKS, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FOR: BOARD GAMES; ELECTRONIC GAME EQUIPMENT FOR PLAYING VIDEO GAMES, NAMELY, HAND HELD UNITS FOR PLAYING VIDEO GAMES OTHER THAN THOSE ADAPTED FOR USE WITH AN EXTERNAL DISPLAY SCREEN OR MONITOR; GAME CARDS; NON ELECTRIC HAND-HELD SKILL GAMES, SOFT DOLLS, NOT FOR ANIMALS; PUZZLES; TOY ACTION FIGURES, NOT FOR ANIMALS; BALLOONS AND YO-YOS; PLUSH TOYS, NOT FOR ANIMALS; CHRISTMAS TREE DECORATIONS; TOY FIGURES ATTACH-ABLE TO PENCILS; PLUSH TOYS THAT CONNECT TO BELTS BY A HOOK; NON-ARTIC-ULATED PVC FIGURES; AND RUBBER BALLS, IN CLASS 28 (U.S. CLS. 22, 23, 38 AND 50).

FOR: PROVIDING A WEB SITE FEATURING ENTERTAINMENT INFORMATION IN THE FIELDS OF ELECTRONIC GAME PROGRAMS, ELECTRONIC GAME PRODUCTS, AND ELECTRONIC GAME PROGRAMS AND PRODUCTS; TELEVISION PROGRAMS IN THE FIELD OF ENTERTAINMENT; ORGANIZING SPORTING EVENTS, NAMELY, SWIMMING MEET, SOCCER COMPETITION, BASEBALL COMPETITION, HOCKEY COMPETITION; ENTERTAINMENT SERVICES IN THE NATURE OF CREATION, DEVELOPMENT, AND PRODUCTION OF FILMS, ANIMATION OR ANIMATED FILMS, AND TELEVISION PRO-GRAMS, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR.

*David J. Kappos*

Director of the United States Patent and Trademark Office

**Reg. No. 3,976,576** OWNER OF INTERNATIONAL REGISTRATION 1034096 DATED 3-4-2010, EXPIRES 3-4-2020.

SER. NO. 79-080,883, FILED 3-4-2010.

JOHN DALIER, EXAMINING ATTORNEY

# United States of America
## United States Patent and Trademark Office



**Reg. No. 3,988,064**

**Registered July 5, 2011**

**Int. Cls.: 9, 16, 28 and 41**

**TRADEMARK**

**SERVICE MARK**

**PRINCIPAL REGISTER**

ROVIO MOBILE OY (FINLAND CORPORATION)
ANNANKATU 31-33C 37
FI-00100 HELSINKI
FINLAND

FOR: VIDEO GAME SOFTWARE FOR ALL ELECTRONIC PLATFORMS SUCH AS MOBILE DEVICES, PERSONAL COMPUTERS, HOME VIDEO GAME CONSOLES, TABLET COMPUTERS; ELECTRONIC GAME PROGRAMS; DOWNLOADABLE ELECTRONIC GAME PROGRAMS; ELECTRONIC GAME SOFTWARE; COMPUTER GAME PROGRAMS; DOWNLOADABLE COMPUTER GAME PROGRAMS; INTERACTIVE GAME PROGRAMS; INTERACTIVE GAME SOFTWARE; GAMES ADAPTED FOR USE WITH TELEVISION RECEIVERS; CINEMATOGRAPHIC APPARATUS; PROTECTIVE CARRYING CASES SPECIALLY ADAPTED FOR PHONES AND HANDHELD COMPUTERS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FOR: BOOKLETS, BOOKS, ACTIVITY BOOKS, PAPERBACK BOOKS, AND MANUALS IN THE FIELD OF VIDEO GAMES; CALENDARS, CHILDREN'S BOOKS, COMIC BOOKS, ADDRESS BOOKS, COLORING BOOKS; BOOK COVERS; BOOKMARKS; ERASERS, GIFT WRAPPING PAPER, GIFT BOXES MADE OF CARDBOARD, INVITATION CARDS, MAGAZINES IN THE FIELD OF VIDEO GAMES, MEMO PADS, NOTE PADS, NOTEBOOKS; PAPER NAPKINS, PARTY DECORATIONS MADE OF PAPER; PENCIL SHARPENERS, PENS AND CRAYONS; CHILDREN'S PICTURE STORYBOOKS; POSTERS, POSTCARDS, RING BINDERS, RUBBER STAMPS, SCRATCH PADS, PAPER STAPLERS, STATIONERY, STATIONERY-TYPE PORTFOLIOS AND FOLDERS, STICKER ALBUMS, STICKERS, TRADING CARDS; GENERAL PURPOSE PLASTIC BAGS; PROTECTIVE COVERS FOR NOTEBOOKS, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FOR: BOARD GAMES; ELECTRONIC GAME EQUIPMENT FOR PLAYING VIDEO GAMES, NAMELY, HAND HELD UNITS FOR PLAYING VIDEO GAMES OTHER THAN THOSE ADAPTED FOR USE WITH AN EXTERNAL DISPLAY SCREEN OR MONITOR; GAME CARDS; NON-ELECTRIC HAND-HELD ACTION SKILL GAMES; SOFT DOLLS; PUZZLES; TOY ACTION FIGURES; BALLOONS AND YOYOS; PLUSH TOYS; PLUSH TOYS THAT CONNECT TO BELTS BY A HOOK; TOY FIGURES ATTACHABLE TO PENCILS; NON-ARTICULATED PLASTIC TOY FIGURES; RUBBER BALLS; AND DECORATIONS FOR CHRISTMAS TREES; PLAYING CARDS, PAPER PARTY HATS, IN CLASS 28 (U.S. CLS. 22, 23, 38 AND 50).

FOR: PROVIDING A WEB SITE FEATURING ENTERTAINMENT INFORMATION IN THE FIELDS OF ELECTRONIC GAME PROGRAMS, ELECTRONIC GAME PRODUCTS, AND



*David J. Kappos*

Director of the United States Patent and Trademark Office

**Reg. No. 3,988,064** OTHER ENTERTAINMENT TOPICS RELATED TO ELECTRONIC GAME PROGRAMS AND PRODUCTS; TELEVISION PROGRAMS IN THE FIELD OF ENTERTAINMENT NEWS; ORGANIZING SPORTING EVENTS, NAMELY, SWIMMING MEETS, SOCCER COMPETITIONS, BASEBALL COMPETITIONS, HOCKEY COMPETITIONS; ENTERTAINMENT SERVICES IN THE NATURE OF CREATION, DEVELOPMENT, AND PRODUCTION OF FILMS, ANIMATION OR ANIMATED FILMS, AND TELEVISION PROGRAMS, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

THE MARK CONSISTS OF A STYLIZED HEAD OF A BIRD, WHICH IS RED WITH A BEIGE BOTTOM, WITH A YELLOW BEAK WITH WHITE TEETH SHOWING, WHITE EYES WITH BLACK PUPILS AND EYEBROWS, AND WITH THE WHOLE DRAWING OUTLINED IN BLACK.

OWNER OF INTERNATIONAL REGISTRATION 1052865 DATED 6-28-2010, EXPIRES 6-28-2020.

THE COLOR(S) RED, BLACK, YELLOW, BEIGE AND WHITE IS/ARE CLAIMED AS A FEATURE OF THE MARK.

SER. NO. 79-087,995, FILED 6-28-2010.

ANDREW LEASER, EXAMINING ATTORNEY

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2012-08-02 12:13:33 ET

**Serial Number:** 79102769 Assignment Information          Trademark Document Retrieval

**Registration Number:** (NOT AVAILABLE)

**Mark**

# ANGRY BIRDS

**(words only):** ANGRY BIRDS

**Standard Character claim:** Yes

**Current Status:** Application has been published for opposition. The opposition period begins on the date of publication.

**Date of Status:** 2012-06-19

**Filing Date:** 2011-04-15

**The Information will be/was published in the Official Gazette on** 2012-06-19

**Transformed into a National Application:** No

**Registration Date:** (DATE NOT AVAILABLE)

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 106

**Attorney Assigned:**
HAN ADA PEYTZY

**Current Location:** 650 -Publication And Issue Section

**Date In Location:** 2012-05-16

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

---

1. Rovio Entertainment Ltd

**Address:**
Rovio Entertainment Ltd
Keilaranta 17 C
FI-02150 Espoo
Finland
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Finland

---

## GOODS AND/OR SERVICES

---

**International Class:** 003
**Class Status:** Active
Bleaching preparations and bleaching salts and bleaching sodas for laundry use; cleaning, polishing, scouring and abrasive preparations; soaps; perfumery, essential oils, cosmetics, hair lotions; dentifrices; non-medicated toiletries; manicure preparations, namely, adhesives for artificial nails, nail cream, nail enamel, nail gel, nail polish, and nail glitter; non-medicated skin and facial cleansers; adhesives for cosmetic purposes; after-shave lotions; antiperspirants; antistatic preparations for household purposes; aromatics, namely, aromatic oils, aromatic potpourris; milled and processed quillaia bark for use as hand-washing soap and laundry soap; bath salts; cosmetic preparations for baths; beauty masks; bleaching salts; bleaching soda; bluing for laundry; color-brightening chemicals in the nature of washing preparations for laundry use; paint removing preparations; cosmetic kits comprised of lipstick, lip gloss, mascara, eye-shadow; cosmetic preparations for slimming purposes; cotton sticks for cosmetic purposes; cotton wool for cosmetic purposes; cosmetic creams; skin whitening creams; creams for leather; denture polishes; preparations for cleaning dentures; personal deodorants; laundry detergents; hair dyes for cosmetic purposes; eau de Cologne; toilet water; hair cream, hair gel, shampoos, hair conditioner and hair moistening preparations; perfumes; lipsticks; skin and face creams and lotions; false nails; nail polishes and varnishes and thinners therefor; sun block; bleaching preparations in the nature of decolorants for cosmetic purposes; cake flavorings in the nature of essential oils; cleansing milk for toilet purposes; eyebrow cosmetics; eyebrow pencils; fabric softeners for laundry use; false eyelashes; floor wax; hair dyes; hair spray; laundry bleach; laundry pre-soak; laundry starch; lotions for cosmetic purposes; make-up; make-up powder; make-up preparations; make-up removing preparations; mascara; mouth washes, not for medical purposes; nail care preparations; cosmetic pencils; polish for furniture and flooring; pomades for cosmetic purposes; potpourris for use as fragrances; pumice stone; sandpaper; scented wood; shoe cream; shoe polish; shoe wax; laundry starch; soap for brightening textile in the nature of laundry soap; starch glaze for laundry purposes in the nature of laundry starch; sun-tanning preparations; tissues impregnated with cosmetic lotions; varnish-removing preparations; depilatory wax; laundry wax; polishing wax; waxes for leather; depilatory preparations; petroleum jelly for cosmetic purposes; decorative fingernail decals for cosmetic purposes; incense; fragrances; gel soap, bar soap; bubble bath; shower gel; toothpaste; mouthwash; cleansing, toning, moisturizing and exfoliating preparations for skin; body cream and lotion; hand cream and lotion; skin cleanser and non-medicated body soaps; perfumed body powder; bath oil; baby oil, baby powder, baby gel and baby lotion; lip gloss, non-medicated lip balm; sachets for perfuming linen; massage oils and lotions; aromatherapy preparations, namely, non-medicated skin creams with essential oils for use in aromatherapy
**Basis:** 66(a)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 014

**Class Status:** Active

Precious metals and their alloys; goods in precious metals or coated therewith, namely, jewelry, boxes, baskets; jewellery, precious stones; horological and chronometric instruments; imitation jewellery and ornaments of precious metal in the nature of jewelry; brooches; pendants; non-monetary commemorative coins and tokens for collecting purposes; cufflinks; earrings; gold thread jewelry; ornaments of precious metal in the nature of jewelry; jewelry of imitation gold; jewellery cases; necklaces; rings; bracelets; medals; medallions; unwrought and semi-wrought precious stones and their imitations; statues and statuettes of precious metal; tie clips; clocks, watches and structural parts and structural fittings therefor; watch straps, watch bands, watch chains; cases for pocket watches; clocks and watches having the game function; electric clocks and electric watches; table clocks; pocket watches; stopwatches; wall clocks; alarm clocks; chronometers; ornamental pins; key chains and key cases/carriers of precious metal and/or precious stones; badges of precious metal; cases for watches (presentation); cases for watches and clocks; sun dials; diamonds; jewelry boxes and jewelry cases of precious metal; chenille cuff links; stock pins in the nature of ornamental pins; figurines in the nature of statuettes of precious metal; trophies of precious metal; commemorative coins; key rings of precious metal; insignias of precious metal; badges of precious metal; pearls; artificial gemstones in the nature of unwrought and semi-wrought precious stones and their imitations

**Basis:** 66(a)

**First Use Date:** (DATE NOT AVAILABLE)

**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 018

**Class Status:** Active

Leather and imitations of leather, and goods made of leather and imitations of leather, namely, handbags, purses; animal skins, hides; trunks and travelling bags; umbrellas, parasols and walking sticks; whips, harness and saddlery; bags, namely, carry all bags; athletic bags; bath bags in the nature of toiletry bags sold empty; book bags; diaper bags; duffel bags; suit carriers being travelling bags; waist bags; all purpose carrying bags, weekend bags in the nature of tote bags; work bags in the nature of attaché cases; backpacks; rucksacks; knapsacks; purses and wallets; suitcases; attaché cases; canvas and leather shopping bags; bands of leather; leather shoulder belts; calling card cases, vanity cases sold empty; school satchels; suitcase handles; travelling sets comprising luggage; travelling trunks; umbrella covers; umbrella handles; walking stick seats; luggage belts; luggage tags, beach bags; briefcases; boxes and cases of leather or leather board; handbags; leather straps; mountaineering sticks; briefcase- type portfolios for carrying sheet music; net bags for shopping; school bags; tool bags of leather or imitations of leather sold empty; valises; hunters' game bags; bags, envelopes and pouches of leather for packaging; handbag frames; sling bags for carrying infants; wheeled shopping bags; wheeled backpacks, duffel bags and suitcases; cardboard trunks and wine carrying cases; chain mesh purses, not of precious metal; clutch purses; coin purses; cosmetic purses; evening purses; leather purses; purses, not of precious metal; garment bags for travel

**Basis:** 66(a)

**First Use Date:** (DATE NOT AVAILABLE)

**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 020

**Class Status:** Active

Furniture, mirrors, picture frames; goods of wood, cork, reed, cane, wicker, horn, bone, ivory, whalebone, shell,

amber, mother-of-pearl, meerschaum and substitutes for all these materials, or of plastics, namely, works of art; office furniture, photograph frames; dressing tables; easy chairs; beds and water beds for non-medical purposes; wood bedsteads; furniture screens; armchairs; baker's bread baskets not of metal; benches; letter boxes of wood or plastic; cabinet work; cabinets; chests for toys; corks; hairdresser's chairs, deck chairs; desks; tables, dinner wagons; head-rests as furniture parts; divans; library shelves; lockers; non-electric locks not of metal; furniture racks, namely, coat racks, hat racks, plant racks, pot racks, and storage racks; saw horses; school furniture; seats; sofas; tea carts; umbrella stands; cots; cupboards; display boards; dressing tables; footstools and stools; shelves; air cushions; Air mattresses for use when camping; air pillows; sleeping bags; bed fittings, not of metal; non-textile curtain holders; curtain hooks; curtain rails; curtain rings; curtain rods; curtain rollers; curtain tie-backs in the nature of non-textile curtain holders; cushions; towel dispensers not of metal; mattresses; pillows; non-metal clothes hooks and coat hangers; coat stands; hat stands; ladders of wood or plastics; embroidery frames; statues of wood, wax, plaster or plastic; fire screens for domestic use; Nonmetal and non-paper containers for storage or transport; storage tanks not of metal or masonry for storing toys; filing cabinets; containers of plastic for packaging purposes; metal-substitute plastic fasteners, namely, nails, wedges, nuts, screws, tacks, bolts, rivets, and casters; door stops of plastic or wood; infant walkers; playpens for babies; support pillows for use in baby seating excluding safety seating for use in automobiles; decorative mobiles; cradles; cots; and cribs; high chairs for babies; furniture chests, chests of drawers; wind chimes; flower-pot pedestals; flower-stands; decorative edging strips of plastics and/or wood for use with window fittings; ornaments and decorations for windows or doors made of or from plastics, wax, wood, cork, reed, cane, wicker, horn, bone, ivory, whalebone, shell, amber, mother-of-pearl, meerschaum and substitutes for these materials; step ladders and ladders not of metal, tool boxes not of metal, non-metal garden stakes for plants or trees; imitation foods for display made of plastic materials, namely, imitation desserts, imitation candy, imitation cakes, imitation fruits; flagpoles, works of art, figurines and statuettes and small decorations or ornaments of wood, cork, reed, cane, wicker, horn, bone, ivory, whalebone, shell, amber, mother-of-pearl, meerschaum and substitutes for these materials, or of wax, plaster or plastics; plastic key cards not encoded; bins, not of metal; bottle closures not of metal; bottle racks; corks for bottles; house numbers, not of metal, non luminous; identity plates, not of metal; inflatable publicity objects; letter boxes not of metal or masonry; magazine racks; plate racks; cup racks; upright signboards of wood or plastic, plastic sealing clips for bags; inflatable headrests in the nature of bath pillows; decorations of plastic for foodstuffs or lunch boxes; handheld flat fans, handheld folding fans, non-electric fans for personal use; bamboo curtains, and bamboo blinds, bead curtains for decoration; bead curtains; oriental single panel standing partition, hanging boards in the nature of Japanese style pegboards using positional hooks for use as movable wall partitions; oriental folding partition screens; drinking straws; keyboards for hanging keys; mannequins; medicine cabinets; mats, removable, for sinks; name plates, not of metal; number plates, not of metal; mirror tiles; pegs not of metal; plastic doorknobs; wood stools; bed pads; crib bumpers

**Basis:** 66(a)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

## International Class: 021
**Class Status:** Active

Containers for household or kitchen use; household or kitchen utensils, namely, pot and pan scrapers, rolling pins, spatulas, turners, whisks; combs and bath sponges, scouring sponges, cleaning sponges; brushes excluding paint brushes, namely, cleaning brushes for household use, nail brushes, hair brushes; brush-making materials; articles for cleaning purposes, namely, cleaning cloths, cleaning cotton, steel wool for cleaning; steel wool; unworked or semi-worked glass except glass used in building; glassware, porcelain and earthenware, namely,

beverage glassware, ornaments and statuettes of porcelain and earthenware; portable baby bath tubs; baskets, for domestic use not of metal; mugs; non-electric food blenders; ironing boards; boot jacks; stoppers for bottles made of/from ceramics, china, glass, crystal, earthenware, terra-cotta and porcelain; bottles sold empty; bowls; iron kettles; salad bowls; non-electric whisks; rice chests; colanders; household utensils, namely, strainers; cooking funnels; food preserving jars of glass; cooking graters; chopstick cases; rolling pins for cooking purposes; lemon squeezers in the nature of citrus juicers; shoe brushes; shoe horns; shoe shine cloths; boxes of metal for dispensing paper towels; mouse traps; fly swatters; candle extinguishers not of precious metal; flower vases; upright signboards of glass or ceramics; cooking sets for outdoor use consisting of tin cans, tin pans, tin pots and tin plates; soap boxes; bread boards; buckets; meal trays; serving trays; cake moulds; waffle moulds; candle rings; candlesticks; candy boxes; comb cases; china ornaments; chinaware, namely, ornaments and statuettes of china; chopsticks in the nature of cooking utensils; clothes drying racks; clothing stretchers; cloths for cleaning; cocktail stirrers; Coffee filters not of paper being part of non-electric coffee makers; non-electrical and hand-operated coffee grinders; coffee services; electric hair combs; pastry bags; cookery moulds; cooking pots; ice pails; portable coolers; corkscrews; bottles sold empty; plastic water bottles sold empty; bottle openers; dishes; plates not of precious metal; champagne buckets; shower caddies, not of precious metal; hair brushes; brushes for clothes; plastic coasters; coffee cups; all purpose household containers; drinking glasses; demitasse sets consisting of cups and saucers; thermal insulated containers for food or beverages; corn cob holders; decanters; sugar bowl and creamer pitchers sold as a set; drinking cups for infants; paper cups; non-metal piggy banks; plastic cups; toothbrush cases; serving utensils, namely, pie servers, cake turners, spatulas, scrapers and cake servers; covers for dishes; covers for flower pots; crockery, namely, pots, dishes, drinking cups and saucers, bowls, serving bowls and trays; cups; decanters; non-electric deep fryers; dishes for soap; soap dispensers; clothes drying racks and dish drying racks for washing; dustbins; egg cups; feeding troughs; flower pots; gloves for household purposes; goblets; graters; non-electric griddles; heat-insulated containers for food or beverages; heaters for feeding bottles, non-electric; holders for flowers and plants; ice buckets; ice cube moulds; beer mugs; jugs; knife rests; knobs of porcelain; lazy susans; liqueur sets comprised of containers for ice, goblets, and beverage glassware; lunch boxes; menu card holders; mess-tins; mixing spoons; mops; napkin holders; napkin rings; nozzles for watering cans; pads for cleaning; pans; paper plates; pastry cutters; pepper mills; perfumery sprayers sold empty; perfume vaporizers sold empty; picnic baskets sold empty; non-metal piggy banks; pot lids; pots; salt shakers; pepper shakers; saucepans; saucers; scoops; scouring pads; shaving brushes; shirt stretchers; shoe trees; soap holders; soup bowls; spice sets comprised of spice racks and hand-operated spice grinders; sponge holders; sponges for household purposes; stands for shaving brushes; statues of porcelain, terracotta or glass; statuettes of porcelain, terra-cotta or glass; syringes for watering flowers and plants; tankards; tea strainers; tea caddies; coffee caddies; tea infusers; tea services; teapots; toilet brushes; toilet paper holders; toilet sponges; toothbrushes; toothbrushes, electric; toothpick holders, not of precious metal; toothpicks; nail brushes; litter trays; trivets; non-electric trouser presses; trouser stretchers; vacuum bottles; waffle and pancake irons, non-electric; cookery and baking irons, non-electric; washing boards; rinsing tubs; watering cans; watering devices, namely, watering cans and watering pots; polishing apparatus and machines for household purposes, non-electric, namely, floor polish applicators mountable on a mop handle; works of art, of porcelain, terra-cotta or glass; decorative ornaments for window or doors made of/from ceramics, china, glass, crystal, earthenware, terra-cotta or porcelain; mouse traps; containers for aromatics and fragrances, namely, potpourri dishes; refrigerating bottles sold empty; boxes of glass; brooms; butter dishes; butter dish covers; cheese-dish covers; candy boxes, not of precious metal; clothes-pegs; non-electric portable cold boxes in the nature of thermal insulated containers for food or beverages; cookie jars; non-electric cooking utensils, namely, grill covers, wire baskets, spatulas; eyebrow brushes; frying pans; gardening gloves; powder puffs; salt and pepper shakers; cookie cutters; cruets, cruet stands; dusters; cocktail shakers; powder compacts, not of

precious metal; pill or tablet boxes for personal use; tissue paper box covers of wood, or plastic; stands for tooth brushes; floss for dental purposes; handles for dental floss; household containers of precious metal; household utensils of precious metal, namely, pot and pan scrapers, rolling pins, spatulas, turners, whisks; coffee services of precious metal; coffee-pots, non-electric, of precious metal; kitchen containers of precious metal; napkin holders and rings of precious metal; kitchen containers of precious metals; powder compacts of precious metal; oven mitts; pill cases of wood and plastic for personal use; barbecue mitts; pot holders; porcelain or earthenware doorknobs

**Basis:** 66(a)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 024
**Class Status:** Active
Bed and table covers of textile; handkerchiefs; napkins of textile; banners of textile; bath linen; bed linen; bedspreads; bed blankets; cotton cloth, felt cloth; covers for cushions; door curtains; towels; flags of textile; toilet gloves; household linen; cloth labels; cloth napkins for removing make-up; mattress covers; washing mitts; mosquito nets; curtains; pillowcases; plastic material, namely, synthetic fiber fabrics; quilts; travelling rugs; textile sheets in the nature of flat bed sheets and fitted bed sheets; shrouds; silk fabrics; table linen; table mats not of paper; tapestries of textile; upholstery fabrics; wall hangings of textile; bedding, namely, bed sheets, bed linen, bed spreads; textile covers for napkin or tissue holders; curtain holders or tiebacks of textile; cotton fabrics; coverlets in the nature of bedspreads; fabrics for textile use; face towels of textile; felt; frieze; hemp fabric; velvet; woolen cloth; tissue paper box covers of textile; covers of fabric for door knobs; fabric table runners; kitchen linens, namely, dish towels for drying, kitchen towels, fabric place mats, washing mitts, fabric table runners, cloth coasters; bath towels; place mats of linen; unfitted coverings of textile and of plastic for furniture; shower curtains; cotton, polyester and/or nylon fabric, fabric of imitation animal skins; golf towels; damask; elastic woven fabrics for clothing; silk fabrics for printing patterns; printers' blankets of textile; oilcloth for use as tablecloths; lingerie fabric; jersey fabric; fabric impervious to gases for aeronautical balloon; linings and sheets of textile for household purposes, namely, curtain liners

**Basis:** 66(a)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 025
**Class Status:** Active
Footwear, aprons; swimwear, swimsuits, bathing suits; gloves; mittens; belts; babies clothing, namely, pajamas, jackets, shirts, jumpers; babies' napkins of textiles in the nature of cloth diapers; bibs, not of paper; underclothing; sleep wear and pajamas; bath robes; suspenders; hats, caps, sun visors, berets; bathing and shower caps; muffs; ear muffs; neckwear, neck ties, cravats, bow ties; socks and stockings, pantyhose; garter belts, stocking and pant hose suspenders; shoes, sport shoes, slippers, beach shoes; masquerade costumes; working sleeves in the nature of sun sleeves; bandanas in the nature of neckerchiefs; bath sandals; bath slippers; ski boots; boots; braces for clothing in the nature of suspenders; brassieres; breeches for wear; camisoles; coats; cuffs; fur stoles; headbands; jackets; jerseys; jumpers; overcoats; pants; parkas; pullovers; sandals; scarves; shawls; shirts; underwear; smocks; spats; boots for sports; sports jerseys; suits; trousers; uniforms; wet suits for water skiing; wristbands; gymnastics shoes; clothing for gymnastics, namely, leotards, tights, t-shirts; sashes for wear; jogging suits; trousers; jeans; pants; tank tops; skirts; blouses; snow suits; robes; sneakers; booties; slipper

socks; cloaks; cloth bibs; chaps; beach cover-ups; dresses; jackets; leotards; overalls; ponchos; rainwear; shorts; sweaters; sweatshirts; babies' pants; welts for boots; clothing of imitations of leather, namely, coats; clothing of leather, namely, shirts, pants, coats, dresses; collar protectors; collars; detachable collars; corsets; cyclists clothing, namely, cycling shorts and jerseys; football boots; football shoes; paper clothing, namely, paper aprons, paper hats, paper shoes used when going through metal detectors to keep feet and socks clean; pockets for clothing; ready-made linings as parts of clothing; saris; skull caps; sports shoes; sweat-absorbent underclothing; teddies; wooden shoes; vests; uniforms; underpants; top hats; togas, non-slip soles for boots and shoes; motorists' clothing, namely, gloves, jackets, rain suits; leggings; hoods; heels; heel pieces for boots and shoes; half-boots; gymnastic shoes; galoshes; garters; furs as clothing, namely, cloaks, coats, jackets, muffs, and stoles; hooded sweatshirts; fleece shirts; loungewear, long sleeve tops; zip through tops; jogging pants; fleece tops; knit fleece hats; fashion headgear, namely, headbands; flip flops; plush slippers; plush novelty hats

**Basis:** 66(a)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 027
**Class Status:** Active
Carpets, rugs, mats and matting, namely, door mats, floor mats; linoleum and coverings for covering existing floors; non-textile wall hangings; automobile carpets; bath mats; floor coverings; door mats; gymnastic mats; gymnasium mats; vinyl floor coverings; wallpaper, wall paper of vinyl, wall paper stencils; play mats, namely, foam mats for use on play area surfaces; children's printed activity rugs; beach mats; tapestry in the nature of wall hangings, not of textile; reed mats; nonslip bath tub mats

**Basis:** 66(a)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 029
**Class Status:** Active
Meat, fish, poultry and game; meat extracts; preserved, frozen, dried and cooked fruits and vegetables; jellies, jams, compotes; eggs, milk and milk products excluding ice cream, ice milk and frozen yoghurt; edible oils and fats; bouillon; bouillon concentrates; broth; broth concentrates; butter; caviar; cheese, cheese snacks, namely, cottage cheese, cheese spreads; cheese in the form of dips, spreads and sticks; dairy products excluding ice cream, ice milk and frozen yogurt; dairy puddings; frosted fruits; frozen fruits; processed and dried fruits; vegetable and fruit juices for cooking; fruit chips; processed and dried vegetables; margarine; marmalade; meat jellies; meat tinned; beverages consisting principally of milk; soybean-based food beverage used as a milk substitute; milk shakes; dairy products for making milk shakes, namely, milk; preserved mushrooms; preserved onions, preserved olives; gherkin; prepared nuts; ginger jam; pastes of liver; pate of liver; cocoa butter for food purposes; and peanut butter; peanuts, processed; lentils, preserved; peas, preserved; fruit peel; potato chips; potato crisps; potato fritters; salads except macaroni, rice, and pasta salad; sauerkraut; sausages; sesame oil; preparations for making soup; soups; tofu; vegetable salads; vegetable soup preparations; whipped cream; yoghurt; processed, edible seaweed; processed, dried and preserved meat, fish, poultry and game; bacon; preparations for making bouillon; chocolate nut butter; charcuterie; ham; crystallized fruits; fish, tinned; fruit jellies; fruit salads; maize oil; olive oil for food; raisins; tomato puree; tinned fruits and vegetables; seafood not live; processed and preserved seafood; seafood, tinned; pickles

**Basis:** 66(a)

**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 030
**Class Status:** Active

Coffee, tea, cocoa, sugar, rice, tapioca, sago, artificial coffee; flour; ices; honey, treacle; yeast, baking-powder; salt, mustard; vinegar, sauces as condiments; spices; ice; breakfast cereal; biscuits; cake powder in the nature of cake mixes; edible decorations for cakes; cake preparations, namely, frosting, icing, candy decorations, and cake mixes; malt for food; soybean malt extract for food; malt biscuits; rice cakes; sweets and candies; sugar confectionery, candy bars, candy mints; chocolate confectionery; chocolate; Chocolate-based beverages with milk; chocolate-based beverages; confectionery decorations for Christmas trees; coffee-based beverages; coffee beverages with milk; coffee flavorings, namely, coffee flavored syrups used in making food beverages; mixtures and preparations for use as substitutes for coffee, namely, Coffee essences and extracts for use as substitutes for coffee, artificial coffee or vegetable preparations for use as coffee; coffee and coffee-based beverages; tea, namely, ginseng tea, black tea, oolong tea, barley and barley-leaf tea; cookies; popcorn; flavoured popcorn; corn flakes; confectionery chips for baking; ice-cream; curry; capers; custard; custard mixes and powder; cereal flakes; flavourings, other than essential oils; confectionery ices; fruit jelly confectionery in the nature of fruit jelly candy; gingerbread; chocolate syrup; ketchup; liquorice; non-medicated lozenges; meat pies; meat tenderizers for household purposes; pancakes; pastilles; pastries; pate; corn chips; tortillas; pepper; pizzas; puddings; ravioli; royal jelly for human consumption not for medical purposes; thickening agents for cooking foodstuffs; wasabi paste; soy sauce; pastas, noodles and vermicelli; sushi; vanilla; waffles; frozen yoghurt; pretzels; almond confectionery, namely, almond paste and almond cake; aromatic preparations for food, namely, extracts used as flavoring; Starch-based binding agents for ice Cream; bread rolls; cakes; caramels; chewing gum, not for medical purposes; corn meal; crackers; crisp bread snacks; flour based savory snacks; cereal based snack foods; edible ices; golden syrup; ice, natural or artificial; macaroni; marzipan; mayonnaise; oatmeal; peppers as seasonings; pies; rusks; cooking salt; sandwiches; tomato sauce; seasonings; sherbets; spaghetti; sweetmeats; tarts; wheat flour; salad dressings; meat gravies; Fruit sauces excluding cranberry sauce and applesauce; cones for ice cream; dessert puddings

**Basis:** 66(a)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 032
**Class Status:** Active

Beers; mineral and aerated waters, fruit drinks and fruit juices; syrups and other preparations for making beverages, namely, syrup substitutes for making beverages; ales; alcoholic and non-alcoholic beers; non-alcoholic fruit drinks; non-alcoholic fruit juices; non-alcoholic fruit extracts used in the preparation of beverages; non-alcoholic wines; pineapple juice beverages; aperitives, non-alcoholic; cocktails, non-alcoholic; energy drinks; non-alcoholic beverages containing fruit juices; syrup for making fruit juices and fruit drinks; fruit nectars, non-alcoholic; whey beverages; extracts of hops for making beer; non-alcoholic honey-based beverages; ginger beers; isotonic beverages; iced fruit beverages; drinking water; vegetable juices; cola beverages; kvass; spring water; Lithia water; preparations for making liqueurs; namely, essences used in the preparation of liqueurs; lemonades; milk of almonds; peanut milk; malt beer; malt-based preparations for making beverages, namely, malt syrup; almond beverages; flavoured waters; beer wort; frozen fruit beverages; lagers; pastilles for effervescing beverages; table waters; bottled water; grape juice; must; sarsaparilla; seltzer water; shandy; cider,

non-alcoholic; soda water; sorbets in the form of beverages; stout; sports drinks; extracts for making beverages, namely, extracts of hops and malt for making beer; non-alcoholic fruit extracts used in the preparation of beverages; vegetable juice; soft drinks; syrups for making soft drinks

**Basis:** 66(a)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 033
**Class Status:** Active
Alcoholic beverages except beers; distilled spirits of rice; aperitifs; alcoholic beverages containing fruit; alcoholic extracts; alcoholic fruit extracts; distilled spirits; alcohol essences; brandy; hard cider; mead; prepared alcoholic cocktail; liqueurs; sake; raki; spirits; vodka; whisky; rum; gin; wine; cooking wine
**Basis:** 66(a)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 034
**Class Status:** Active
Tobacco; matches; ashtrays; cigarette paper; cigar cases; cigarette cases; cigar cutters; cigar holders; cigarette filters; mouthpieces for cigarette holders; cigarette holders; cigarette tips; cigarettes; cigarettes containing tobacco substitutes; cigarillos; cigars; lighters for smokers; match boxes; match holders; matches; Pipe cleansers for tobacco pipes and smoking pipes; pipe racks for smoking pipes; tobacco pipes; tobacco pouches; snuffboxes; tobacco jars
**Basis:** 66(a)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 035
**Class Status:** Active
Advertising; business management; business administration; office functions; wholesale store services, retail store services, and mail order catalog services featuring games for mobile devices, games for personal computers, games for consoles, games for tablets, electronic game programs, downloadable electronic game programs, electronic game software, computer game programs, downloadable computer game programs, interactive game programs, interactive game software, protective carrying cases specially adapted for phones and handheld computers, mouse pads, party favours and festive decorations and ornaments, gifts, soaps, perfumery, essential oils, cosmetics, hair lotions, hair care products, toiletries, dentifrices, personal hygiene products, cleaning, polishing and abrasive preparations, substances for laundry use, manicure tools, nail care preparations, nail polish, nail varnish, false nails, dietetic substances, food for babies, sanitary preparations, candles, wicks, spills for lighting, greases, lubricants, oils for paints, cutlery, crockery, manicure sets, shaving instruments, razors, machines and machine tools for kitchen or household purposes, hand-held tools, films, cameras, photo discs, video recorders, audio and video tapes, records and discs, instruments and apparatus for the recording, transmitting and/or reproduction of sounds and/or images, televisions, cassette tape players and/or recorders, video cassette and/or disc players and/or recorders, radios, telephones, wireless phones, mobile phones, mobile phone cases, decorations and straps for phones, call indicators, calculating machines, calculators, electronic and computer games, cinematographic films, lights, fans, cooking utensils, cake and pastry moulds, toasters, ovens,

kitchen utensils, utensils and containers for serving or storing food and/or beverages, chop sticks, cutting instruments, porcelain, chinaware, crystal ware, enamelware, silverware, glassware, terra-cotta ware, earthenware, ceramics, hair dryers, lamps, lamp shades and parts and fittings therefor, baby carriages, balloons, bicycle horns, clocks and watches and accessories and parts and fittings therefor, jewellery and imitation jewellery, ornaments, goods of precious metal or coated therewith, music boxes, musical instruments, pictures, photographs, stationery, paper and cardboard and goods made from these materials, artists materials, paint brushes, writing instruments, printed matter, books, newspapers, magazines and periodicals, greeting and Christmas cards, playing cards, packing and packaging materials, picture frames and stands, adhesives for stationery or household purposes, goods made of leather and/or imitations of leather, bags and luggage, purses and wallets, umbrellas, walking sticks, furniture, mirrors, coat hangers and pegs, boxes and containers, name plates, small household fittings, household or kitchen utensils and containers, combs, sponges, brushes, articles for cleaning purposes, spectacles, spectacle frames and sunglasses and cases and accessories therefor, textile and textile goods, bedding, and table linens and covers, napkins, table mats, furniture, haberdashery, handkerchieves, articles of children, women and men's clothing, footwear, headgear and gloves, buttons, badges, ribbons and braid, lace and embroidery, hair pins and ornaments, braces, shoe ornaments, hat ornaments, zipper and zipper fasteners, carpets, rugs and mats, toys, games and playthings, dolls, plush toys, soft dolls, figurines, sporting articles, decorations for Christmas trees, food and beverages, confectionery, floral products, matches, cigars, cigarettes and smokers' articles; advertising; organization of exhibitions for commercial or advertising purposes; publication of publicity texts; sales promotion for others; arranging of fairs and exhibitions for advertising purposes; business management of performing artists; import-export agencies; compilation of information into computer databases; direct mail advertising; business management of hotels; marketing research; outdoor advertising; personnel recruitment; advertising agency services; radio advertising; television advertising; on-line advertising on a computer network; rental of advertising time on communication media; office machines and equipment rental; vending machine rental services; auctioneering

**Basis:** 66(a)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

### International Class: 036

**Class Status:** Active

Computerized financial services, namely, electronic commerce payment services, namely, establishing funded accounts used to purchase goods and services on the Internet; computerized financial services for retail businesses, namely, a micro-payment system for online transactions for the purchase of goods and services; information, advisory and consultancy services relating to funded accounts used to purchase goods and services on the Internet; agency for renting of apartments; apartment house management; banking; capital investments; charitable fund raising; credit card services; issuance of credit cards; debit card services; financial information; financing services; issue of tokens of value; issuing of cheques and travellers' checks; leasing of real estate; real estate management; rent collection; rental of offices; renting of apartments; renting of flats; savings banks; electronic funds transfer; real estate agencies; trusteeship services; fire insurance underwriting; fund investments; health insurance underwriting; insurance brokerage; insurance underwriting; life insurance underwriting; marine insurance underwriting; mutual funds brokerage, distribution, and investment; home banking; financing of loans

**Basis:** 66(a)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

Case 1:12-cv-06048-PAC    Document 1    Filed 08/08/12    Page 35 of 54

**International Class:** 038

**Class Status:** Active

Telecommunication services, namely, providing internet access via broadband optical or wireless networks; cable television broadcasting; television broadcasting; cellular telephone communication; communications by fiber optic networks; communications by telegrams; communications by telephone; providing information in the field of telecommunications, specifically regarding communication by telephones and cellular telephones; computer aided transmission of messages and images; electronic mail; facsimile transmission; radio broadcasting; sending of telegrams; telephone communication services, video telephone services; television broadcasting; paging services; providing telecommunications connections to a global computer network; providing user access to a global computer network; telecommunications routing and junction services; electronic bulletin board services; teleconferencing services; communication via consumer video game apparatus by digital transmission or by satellite; providing information on communication via consumer video game apparatus by digital transmission or by satellite; communication via arcade video game machines by digital transmission or by satellite; providing information on communication via arcade video game machines by digital transmission or by satellite; communication via handheld game apparatus by digital transmission or by satellite; providing information on communication via handheld game apparatus by digital transmission or by satellite; Telecommunication services, other than broadcasting, namely, providing internet access via broadband optical or wireless networks; news agencies, namely, the transmission of news items to news reporting organizations; rental of telecommunication equipment including telephones and facsimile apparatus; rental of modems; Electronic message sending, message sending via a website; satellite transmission

**Basis:** 66(a)

**First Use Date:** (DATE NOT AVAILABLE)

**First Use in Commerce Date:** (DATE NOT AVAILABLE)


**International Class:** 043

**Class Status:** Active

Services for providing food and drink; providing temporary housing accommodations; hotel accommodation services and catering services for guests; restaurants; cafes; cafeterias; bars; canteens; catering services; self-service restaurants; snack bars; cocktail lounges; providing information in the field of provision of food and drinks; provision of temporary accommodations and lodging facilities in the nature of hotels, motels, and boarding houses; agency services for the reservation of temporary accommodations and lodging facilities in the nature of hotels, motels, and boarding houses; providing information in the field of temporary accommodations for travelers; child care centers; day-nurseries; tourist homes; bar services

**Basis:** 66(a)

**First Use Date:** (DATE NOT AVAILABLE)

**First Use in Commerce Date:** (DATE NOT AVAILABLE)

---

## ADDITIONAL INFORMATION

---

**Color(s) Claimed:** Color is not claimed as a feature of the mark.

**Prior Registration Number(s):**
3976576

---

# MADRID PROTOCOL INFORMATION

**International Registration Number:** 1091303
**International Registration Date:** 2011-04-15
**Priority Claimed:** Yes
**Date of Section 67 Priority Claim:** 2011-03-31
**International Registration Status:** Request For Extension Of Protection Processed
**Date of International Registration Status:** 2011-10-06
**International Registration Renewal Date:** 2021-04-15
**Notification of Designation Date:** 2011-10-06
**Date of Automatic Protection:** 2013-04-06
**Date International Registration Cancelled:** (DATE NOT AVAILABLE)
**First Refusal:** Yes

---

## PROSECUTION HISTORY

---

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2012-06-19 - Official Gazette Publication Confirmation E-Mailed

2012-06-19 - Published for opposition

2012-05-30 - Notification Of Possible Opposition Sent To IB

2012-05-30 - Notice Of Start Of Opposition Period Created, To Be Sent To IB

2012-05-30 - Notification Of Notice Of Publication E-Mailed

2012-05-16 - Law Office Publication Review Completed

2012-05-16 - Assigned To LIE

2012-05-02 - Approved for Pub - Principal Register (Initial exam)

2012-05-02 - Examiner's Amendment Entered

2012-05-02 - Notification Of Examiners Amendment E-Mailed

2012-05-02 - EXAMINERS AMENDMENT E-MAILED

2012-05-02 - Examiners Amendment - Written

2012-04-25 - Teas/Email Correspondence Entered

2012-04-25 - Communication received from applicant

2012-04-25 - TEAS Response to Office Action Received

2011-12-05 - Refusal Processed By IB

2011-10-31 - Non-Final Action Mailed - Refusal Sent To IB

2011-10-31 - Refusal Processed By MPU

2011-10-29 - Non-Final Action (Ib Refusal) Prepared For Review

2011-10-28 - Non-Final Action Written

2011-10-14 - Application Filing Receipt Mailed

2011-10-10 - Assigned To Examiner

2011-10-10 - New Application Office Supplied Data Entered In Tram

2011-10-07 - Limitation From Original Application Entered

2011-10-06 - Sn Assigned For Sect 66a Appl From IB

---

## ATTORNEY/CORRESPONDENT INFORMATION

---

**Attorney of Record**
Christine B. Redfield

**Correspondent**
CHRISTINE B. REDFIELD
K&L GATES LLP
630 HANSEN WAY
PALO ALTO, CA 94304-1022
Phone Number: (650) 798-6700
Fax Number: (650) 798-6701

---

# EXHIBIT B

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## VA 1-778-702

**Effective date of
registration:**

June 17, 2011

---

## Title

**Title of Work:** Angry Birds - Big Red Bird

## Completion/Publication

**Year of Completion:** 2010

**Date of 1st Publication:** April 16, 2010          **Nation of 1st Publication:** Finland

## Author

■          **Author:** Rovio Mobile Oy

**Author Created:** 2-D artwork

**Work made for hire:** Yes

**Citizen of:** Finland                    **Domiciled in:** Finland

## Copyright claimant

**Copyright Claimant:** Rovio Mobile Oy

Keilaranta 17, Espoo, FI-02150, Finland

## Limitation of copyright claim

**Material excluded from this claim:** 2-D artwork

**Previous registration and year:** 1-769-078          2009

**New material included in claim:** 2-D artwork

## Rights and Permissions

**Name:** Garfield Goodrum

**Email:** garfield.goodrum@designlawgroup.com          **Telephone:** 301-585-8601

**Address:** 8601 Georgia Ave., Ste. 603

Silver Spring, MD 20910  United States

## Certification

Name:   Garfield Goodrum, Esq.

Date:   June 17, 2011

Correspondence:  Yes

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code,*
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## VA 1-778-705

**Effective date of
registration:**

June 17, 2011

## Title

Title of Work: Angry Birds - Black Bird, Blue Bird, White Bird, Yellow Bird

## Completion/Publication

Year of Completion: 2009

Date of 1st Publication: December 10, 2009     Nation of 1st Publication: Finland

## Author

■      Author: Rovio Mobile Oy

Author Created: 2-D artwork

Work made for hire: Yes

Citizen of: Finland                       Domiciled in: Finland

## Copyright claimant

Copyright Claimant: Rovio Mobile Oy

Keilaranta 17, Espoo, FI-02150, Finland

## Rights and Permissions

Organization Name: SAIDMAN DesignLaw Group, LLC

Name: Garfield Goodrum, Esq.

Email: garfield.goodrum@designlawgroup.com          Telephone: 301-585-8601

Address: 8601 Georgia Ave., Ste. 603

Silver Spring, MD 20910 United States

## Certification

Name: Garfield Goodrum, Esq.

Date: June 17, 2011

Correspondence: Yes

Registration #:   VA0001778705
Service Request #:   1-623841211

SAIDMAN DesignLaw Group, LLC
Garfield Goodrum
8601 Georgia Ave., Ste. 603
Silver Spring, MD 20910  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## VA 1-778-703

**Effective date of
registration:**

June 17, 2011

## Title

**Title of Work:** Angry Birds - Green Bird

## Completion/Publication

**Year of Completion:** 2010

**Date of 1st Publication:** April 23, 2010          **Nation of 1st Publication:** Finland

## Author

**Author:** Rovio Mobile Oy

**Author Created:** 2-D artwork

**Work made for hire:** yes

**Citizen of:** Finland          **Domiciled in:** Finland

## Copyright claimant

**Copyright Claimant:** Rovio Mobile Oy

Keilaranta 17, Espoo, FI-02150, Finland

## Rights and Permissions

**Organization Name:** SAIDMAN DesignLaw Group, LLC

**Name:** Garfield Goodrum, Esq.

**Email:** garfield.goodrum@designlawgroup.com          **Telephone:** 301-585-8601

**Address:** 8601 Georgia Ave., Ste. 603

Silver Spring, MD 20910  United States

## Certification

**Name:** Garfield Goodrum, Esq.

**Date:** June 17, 2011

**Correspondence:** Yes

**Registration #:**  VA0001778703
**Service Request #:**  1-623841397



SAIDMAN DesignLaw Group, LLC
Garfield Goodrum
8601 Georgia Ave., Ste. 603
Silver Spring, MD 20910  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## VA 1-776-995

**Effective date of registration:**

June 20, 2011

---

## Title

**Title of Work:** Helmet Pig, Moustache Pig & Green Pig

## Completion/Publication

**Year of Completion:** 2010

**Date of 1st Publication:** November 30, 2010   **Nation of 1st Publication:** Finland

## Author

- **Author:** Rovio Mobile Oy

  **Author Created:** sculpture/3-D artwork

  **Work made for hire:** Yes

  **Citizen of:** Finland   **Domiciled in:** Finland

## Copyright claimant

**Copyright Claimant:** Rovio Mobile Oy

Keilaranta 17, Espoo, FI-02150, Finland

## Limitation of copyright claim

**Material excluded from this claim:** Preexisting drawing

**New material included in claim:** sculpture/3-D artwork

## Rights and Permissions

**Organization Name:** SAIDMAN DesignLaw Group, LLC

**Name:** Garfield Goodrum, Esq.

**Email:** garfield.goodrum@designlawgroup.com   **Telephone:** 301-585-8601

**Address:** 8601 Georgia Ave., Ste. 603

Silver Spring, MD 20910 United States

## Certification

**Name:**  Garfield Goodrum, Esq.

**Date:**  June 20, 2011

---

**Correspondence:**  Yes

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## VA 1-776-992

**Effective date of
registration:**

June 20, 2011

## Title

**Title of Work:** Mighty Eagle

## Completion/Publication

**Year of Completion:** 2011

**Date of 1st Publication:** March 1, 2011          **Nation of 1st Publication:** Finland

## Author

**Author:** Rovio Mobile Oy

**Author Created:** sculpture/3-D artwork

**Work made for hire:** Yes

**Citizen of:** Finland          **Domiciled in:** Finland

## Copyright claimant

**Copyright Claimant:** Rovio Mobile Oy

Keilaranta 17, Espoo, FI-02150, Finland

## Limitation of copyright claim

**Material excluded from this claim:** Preexisting drawing

**Previous registration and year:** VA1769080          2010

**New material included in claim:** sculpture/3-D artwork

## Rights and Permissions

**Organization Name:** SAIDMAN DesignLaw Group, LLC

**Name:** Garfield Goodrum, Esq.

**Email:** garfield.goodrum@designlawgroup.com          **Telephone:** 301-585-8601

**Address:** 8601 Georgia Ave., Ste. 603

Silver Spring, MD 20910  United States

## Certification

Name:   Garfield Goodrum, Esq.

Date:   June 20, 2011

Correspondence:   Yes

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**VA 1-777-195**

**Effective date of
registration:**

June 21, 2011

## Title

**Title of Work:** Red Bird, Yellow Bird, Blue Bird, White Bird & Black Bird

## Completion/Publication

**Year of Completion:** 2010

**Date of 1st Publication:** October 29, 2010   **Nation of 1st Publication:** Finland

## Author

**Author:** Rovio Mobile Oy

**Author Created:** sculpture/3-D artwork

**Work made for hire:** Yes

**Citizen of:** Finland   **Domiciled in:** Finland

## Copyright claimant

**Copyright Claimant:** Rovio Mobile Oy

Keilaranta 17, Espoo, FI-02150, Finland

## Limitation of copyright claim

**Material excluded from this claim:** 2-D artwork

**New material included in claim:** sculpture/3-D artwork

## Rights and Permissions

**Organization Name:** SAIDMAN DesignLaw Group, LLC

**Name:** Garfield Goodrum, Esq.

**Email:** garfield.goodrum@designlawgroup.com   **Telephone:** 301-585-8601

**Address:** 8601 Georgia Ave., Ste. 603

Silver Spring, MD 20910  United States

## Certification

**Name:**   Garfield Goodrum, Esq.

**Date:**   June 21, 2011

**Correspondence:**   Yes

# EXHIBIT C

★ ᶜFREE SHIPPING on orders over $75 ★

My Account    Order Stat

# LESTER'S

Home > Boys > Boys 4 - 7 > Sleepwear > Angry Birds Pajama Pants





# Angry Birds Pants

BY MADE WITH LOVE AND KISSES

Soft, fuzzy pajama pants with angry bii
100% Microfiber Polyester. Machine w ɛ

## $55.00

SELECT A COLOR:

SELECT A SIZE:  View Sizing Chart

4/5

Add t
SHIPP

You Might Also Like...



**Solid Long Sleeve Dress Shirt**

$40.00



**Android**

$42.00



**Epic Swim Shorts**

$26.00



**NCAA Lounge Pan**

$18.00



JUNIORS

*Make a Fashion Statement with This Season's Trends*

**Shop the Latest in Juniors**



LESTER'S

SEE WHAT OUR HAVE TO SAY.

STORE LOCATIONS • CONTACT US • GIFT CARDS • MODEL SEARCH    ✉ **JOIN OUR LIST**   West

**Our Stores**
About Us
Gift Registry
Personal Shoppers
Press & Events

**My Account**
Order Status
Wishlist
Registries
Reward Points

**Need Help?**
Contact Us
Returns & Exchanges
Shipping Info
FAQs

